FILED

2018 SEP 28 PM 4: 13

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CR No. 18CR00659-JFW |
|---|---|
| Plaintiff, | **I N F O R M A T I O N** |
| v. | [18 U.S.C. § 371: Conspiracy to Commit Bribery] |
| THEODORE BAUER, | |
| Defendant. | |

The United States Attorney charges:

[18 U.S.C. § 371]

A. INTRODUCTORY ALLEGATIONS

At all times relevant to this Information:

1. The United States Department of the Navy ("U.S. Navy") operated the Naval Facilities Engineering Command ("NAVFAC"), Public Works Department ("PWD"), which was responsible for facilities maintenance and management for U.S. Navy and United States Marine Corps installations. On occasion, PWD contracted with private vendors to provide building and infrastructure maintenance for United States Navy facilities.

//
DOB

2. The U.S Navy operated Naval Base Ventura County (the "Naval Base"), an installation in Ventura County, within the Central District of California, composed of three facilities: Point Mugu, Port Hueneme, and San Nicolas Island.

3. Co-conspirator Public Official A was the Master Scheduler for the PWD at the Naval Base. As Master Scheduler, Public Official A was responsible for approving material purchases, service contracts, vendors with whom PWD contracted, and payments on invoices. Public Official A supervised PWD purchasing agents, also known as buyers or Government Purchase Card ("GPC") holders. GPC holders interacted directly with PWD vendors, placed orders for supplies and services, and paid vendor invoices.

4. Defendant THEODORE BAUER ("BAUER") was a Ventura County businessman and president of Gold Coast Supply, Inc. ("GCS"), a California corporation headquartered in Camarillo, California, that serviced both private sector accounts and procurement work for the U.S. Navy.

5. On or about July 9, 2009, defendant BAUER incorporated Western Military Supply.com ("WMS"), a California corporation headquartered in Camarillo, California.

6. On or about September 13, 2011, Public Official A incorporated Company B, a California corporation headquartered in Oxnard, California.

7. On or about November 15, 2011, defendant BAUER incorporated MNC Facility Services, Inc. ("MNC"), a California corporation headquartered in Ventura, California.

8. T&A Carpet Cleaning Technology Advance, Inc., also known as T&A Services & Supplies, Inc. ("T&A"), was a California corporation

headquartered in Oxnard, California. On December 1, 2013, Public Official A purchased 85 percent of T&A's shares.

B.  OBJECT OF THE CONSPIRACY

9.  Beginning in or about 2008, and continuing through at least on or about March 20, 2014, in Ventura County, within the Central District of California, and elsewhere, defendant BAUER, together with co-conspirator Public Official A and others known and unknown, knowingly combined, conspired, and agreed to commit offenses against the United States, namely, to directly and corruptly give, offer, and promise money, to a public official, with intent to: (i) influence official acts; (ii) influence such public official to commit and aid in committing, collude in, and allow, a fraud on the United States; and (iii) induce such public official to do an act and omit to do an act in violation of his official duty, in violation of Title 18, United States Code, Section 201(b)(1).

C.  MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

10. The object of the conspiracy was to be accomplished, in substance, as follows:

   a.  Co-conspirator Public Official A would prepare or cause the preparation of purchase orders or work orders to companies controlled by defendant BAUER.

   b.  Defendant BAUER's companies would not supply product or services in response to the purchase orders or work orders but, nevertheless, issue invoices requesting payment for such materials and services.

        c.    Co-conspirator Public Official A would acknowledge that product or services had been supplied and would authorize payment on the invoices.

        d.    Co-conspirator Public Official A would cause GPC holders to issue payments to defendant BAUER's companies, or, in the alternative, provide defendant BAUER with GPC numbers, expiration dates, and credit card verification ("CCV") numbers so that defendant BAUER could implement charges to government financial accounts.

        e.    Upon receipt of government payments, defendant BAUER would, as directed, disburse funds to Public Official A. Prior to 2011, defendant BAUER would pay Public Official A his share in cash. Beginning in or about October 2011, defendant BAUER would issue checks on behalf of his companies payable to Company B. Beginning in or about 2014, defendant BAUER issued checks on behalf of his companies payable to either Company B or T&A.

        f.    Co-conspirator Public Official A would transfer funds from Company B or T&A to purchase real estate, make payments on mortgages, purchase vehicles, or make payments to other, third party vendors for the benefit of co-conspirator Public Official A and his family.

D.    OVERT ACTS

11.    In furtherance of the conspiracy and to accomplish the object of the conspiracy, on or about the following dates, defendant BAUER and co-conspirator Public Official A committed the following overt acts within the Central District of California, and elsewhere:

Overt Act 1: On January 10, 2014, defendant BAUER issued a $2,620 check on behalf of GCS payable to Company B.

1    <u>Overt Act 2</u>: On January 15, 2014, co-conspirator Public Official A issued a $3,195.77 check on behalf of Company B to Bank of America FIA Card Services to pay for "repairs to condo".

<u>Overt Act 3</u>: On January 16, 2014, defendant BAUER issued a $2,400 check on behalf of WMS payable to Company B.

<u>Overt Act 4</u>: On January 24, 2014, co-conspirator Public Official A issued a $1,640 check on behalf of Company B to the Rancho Perilla Master Association, to pay homeowners association fees.

<u>Overt Act 5</u>: On January 24, 2014, Public Official A issued a $710 check on behalf of Company B to the Chico Westwood Condo Association, to pay homeowners association fees.

<u>Overt Act 6</u>: On January 30, 2014, defendant BAUER issued a $2,750 check on behalf of MNC payable to Company B.

<u>Overt Act 7</u>: On February 4, 2014, defendant BAUER issued a $2,600 check on behalf of GCS payable to Company B.

<u>Overt Act 8</u>: On February 12, 2014, co-conspirator Public Official A transferred $5,000 from Company B to his personal checking account ending in 6394.

<u>Overt Act 9</u>: On February 28, 2014, co-conspirator Public Official A issued a $5,600 check on behalf of Company B to the Internal Revenue Service to pay personal federal income taxes for himself and his wife.

<u>Overt Act 10</u>: On March 5, 2014, defendant BAUER issued a $2,125 check on behalf of WMS payable to Company B.

<u>Overt Act 11</u>: On March 10, 2014, co-conspirator Public Official A issued a $1,031.66 check on behalf of Company B to make a mortgage payment on his property.

<u>Overt Act 12</u>: On March 10, 2014, co-conspirator Public Official A issued a $2,647.58 check on behalf of Company B to make a mortgage payment on his property.

NICOLA T. HANNA
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

MACK E. JENKINS
Assistant United States Attorney
Chief, Public Corruption &
 Civil Rights Section

DANIEL J. O'BRIEN
Assistant United States Attorney
Deputy Chief, Public Corruption &
 Civil Rights Section